All right, I'll call the case of Hector Hernandez v. Plastipak Packaging. Hello. May it please the court, this is Michael Cummings for Appellant Plastipak Packaging, Inc. So we're here today to talk about the fluctuating workweek rule. And try to put it simply as possible, it deals with overtime situations for non-exempt salaried employees when they have a fixed salary or fixed weekly wage, as has been stated, but they have variable hours. Since the overtime statute, Section 7 of the Fair Labor Standards Act talks in terms of a regular rate, you get overtime at a half of your regular rate, it was immediately an issue, what do you do with a salaried employee? How do you come to that workweek rule is that answer. You take the entire salary and you divide it by the number of hours worked in any given week, and that is your rate. So the rate fluctuates as the hours fluctuate. The more hours, the lower the rate. And we've thrown a lot of examples in the brief and I was half tempted to put up a graph for you, but I think the concept is clear. So the question is, where does this rule come from? And of course, you look at the statute itself, Section 7 doesn't mention anything like it, as the courts have recognized it and written in terms of hourly wages. So it was a Supreme Court in the Missile case, overnight Motor Transportation Court v. Missile, that established definitively the fluctuating workweek rule. It had been earlier promulgated as an interpretive rule by the Department of Labor almost immediately after the effective date of the statute in 1938. And of course, Missile winds up ratifying that rule. It does it in the footnote, but it was more explicit in the lower court cases. So essentially, the regular rate for terms of overtime is fluctuating in this situation. Again, fixed salary with variable hours. I think it's important, I think, to take a quick look at the statute before we move on. And particularly the last phrase of Section 8.1, which says, the basic structure is you can't work more than the overtime rate 40 hours now, unless the employee is paid for these excess hours at a rate not less than one and one half times the regular rate at which he's employed. And the one point there I'd like to make very quickly is that it is two numbers there. There's one and there's one half. One is what we call it with always called straight time. That is what you're going to get anyway. You're working $20 an hour, you still get that $20 per hour in your overtime hours. And the one half, which is a deal that's called a 50% bonus, your overtime is 50%. In the case of the fluctuating work week, what you get already is your salary. You're getting a fixed salary, whatever it is per week, $1,000, $500, $2,000. You're getting that and you continue to get that because that's what you always get. It's the same amount. So the bonus is 50% of this fluctuating regular rate. And this comes right from MISL itself. And I think the next point to the problem here, right, is that the district court said, I think it's undisputed that the plaintiff was not being paid the same salary every week. His rate was fluctuating on his hours, right? No, that's not your rate. And the terminology, we're distinguishing between salary and entire compensation. And that is the crux of the issue here. The question is whether the entire compensation package. In answering his question, be mindful that the district court order says the record reflects that Mr. Hernandez's straight time pay was not fixed, period. Rather, his pay varied each week depending on whether he received night shift premium pay and or holiday pay. And we don't dispute that. Straight time pay is the requirement that the O'Brien case, the first circuit case, I think it was 2003, misinterpreted the interpretative rule. It took it. It failed, as it should have, to compare its interpretation against MISL. So in a footnote in that case, it says we're not comparing it to MISL because the parties aren't arguing that. So it made two mistakes. It failed to compare whether this strict rule that the entire straight time pay, not just, we're saying as long as you have a fixed salary in there, and that fixed salary is fixed in there, you can add things on top of it. And MISL does, MISL, of course, does not directly deal with this issue, but its reasoning, it says, you know, it says, well, we're going to look at the economic reality. Apart from the statute, apart from the act, if you have a fixed weekly wage, your rate varies. That's an economic reality for a fixed salary that doesn't change when you put something on top of it. So if somebody in this case earns a shift premium, we're not, the employer's not going to say, oh, well, you know, you earned a shift premium last night. We're going to treat you as hourly now. And since you only work 20 hours this week, we're paying you half pay. No, that doesn't happen. You have that salary, a salary in there must be fixed. It's a complete misreading of the wording of one of section, you know, CFR 778.114. It's a misreading of that statement. And more importantly, that's only an interpretive rule anyway. The district court, any of these courts should have gone back to MISL and say, does that make sense against MISL? Does MISL require that? Does the logic, and it doesn't, because if you have the principle of MISL, we're going to look at the economic reality situation. The economic reality is that when you have a fixed salary, it's fixed no matter what you put on top of it. It's fixed in what you're actually paid. It's fixed in the employment. It's also fixed in the understanding of the employees. No employee thinks that if I get a shift premium, they're going to dock me off my fixed salary, nor do they expect that if I get a shift premium, I'm going to get, if I work twice as many hours, I'm going to get a paid double on my fixed salary. In the thinking of the employees, in the economic reality, that salary was fixed. And MISL stands for whatever you get a fixed salary. Whether there's anything added on to not, MISL applies. You would be violating MISL. You would be controversy MISL if you had a fixed salary. Mr. Cummings, so you rely so heavily on MISL, and you read it to say something I don't see it saying. I mean, you say that it says paying one half wage for hours over 40 is justified by MISL. Because MISL tells you what you do when you get a fixed salary. Where does it say that? Where does it say half pay for hours over 40? Actually, it says it in footnote 16, to be frank. And that's what was the holding of the circuit court below. Footnote 16 says wage divided by hours equals regular pay. Time and a half regular rate for hours employed beyond statutory maximum equals compensation for overtime hours. I mean, it doesn't say half time for hours over 40. Well, you have to distinguish that you're already getting your time. What it's saying is you get your time. That's why there's two numbers there. The time is what you get anyway. The time is your salary. That is your straight time pay. And you get a half of your regular rate. So your regular rate is already what's in your salary. Otherwise, it wouldn't be making sense. If you're going to be adding some kind of hourly rate on top of the salary, then the whole MISL structure falls apart. Why would you bother dividing the entire hours? If somebody works 60, why would you divide the salary by 60 hours if that wasn't what the regular rate was the whole time? The salary covers that entire time. It covers 40 hours. It covers 10 hours. It covers 80 hours. You get a fixed salary. That is your time. That is your straight time pay. And if you want to take a MISL, it's a mistake that MISL made. But the point is there. I'll indulge a court for a couple of general interpretive rules here. I think we'll get to Walling B. Bellow. It's basically saying, I'll give it to you. Walling B. Bellow, 62, 3.1223, 316 U.S., 624. We're on page 635 U.S. Pretty much the end of the main opinion before the dissent. And it's given us some interpretative rules. The actual was just sort of a fixed minimum here. This is when employees and employers have an agreed upon arrangement. And the agreed upon arrangement, there's no mistake. When there's no shift premium involved, there's no issue here what the understanding is. The understanding is I get this fixed salary. And I might get something on top of it sometimes. And sometimes not. So you have one week where he has no shift premium. And the next week where he that fixed salary doesn't change. His one time, his straight time pay only changes because it's been added to. That fixed part is just as fixed. When you have, you know, adding 3% on top of the salary doesn't change that fixed part of it. So let me ask you a question about this. And this is something that has been bothering me about this case, which is in your view, is there any fixed weekly wage and a fixed weekly wage? That is, could you just always have a minimum fixed weekly wage? And just put whatever you want to on top of it? No matter what conceptually, no, your honor, conceptually, you could have there's nothing that prevents a mixed compensation package, part fixed, part hourly. And the rules are pretty simple. That fixed part, that part is fixed, gets the fluctuating work rule. The part that's hourly gets the hourly rule. Very simple. Because it goes to the economic reality, your straight time pay on a fixed spring, that part of your compensation that's fixed is fixed for all the hours. So it is the straight time pay. And you see, because this is going on the economic reality. I work a fixed pay, I work variable hours, that part is fixed. So there's no reason not to handle any fixed component. Now, if it was a trivial amount, de minimis or something, but here we're now we're talking about an occasional 3% bonus on top. But conceptually, the economic reality, economic reality, the economic understanding of the parties is a quotient. We have straight time pay is that one time required by the statute, that's what MISL holds. That one time is already coming in from the salary. Otherwise, MISL makes no sense at all. You know, it's completely nonsensical that why if all of a sudden you stop at 40 hours, then one time becomes some kind of hourly rate, and you're transformed to an hourly employee at that time, or that part of your pay gets transformed from fixed to hourly. No, it doesn't. The economic understanding between the parties is that it is fixed for all those hours. And therefore, MISL tells you how you calculate the regular rate for a fixed salary. And I mean, one context, the Department of Labor at the time, which has ratified MISL, clearly interchanged the term fixed basic salary, and fixed weekly salary in the interpretive MISL, specifically talked about a minimum salary. It used that word. So that was the understanding, the Department of Labor. That was the understanding of it that was ratified by MISL. And that's much more explicit, I meant in the Department of Labor. But it's true that footnote, I believe it's 17, it ratifies it. It says, we approve with this interpretive rule, we approve, we bless it. It's the law. And that's what you get. Your time is up. We've saved three minutes for rebuttal. Yeah, I'll take two and a half. Thank you. Oh, that's okay. We'll give you three. May it please the court, Andrew Frisch for the appellee, Hector Hernandez. Because the fluctuating workweek can undermine the FLSA's remedial nature, an employer may only pay halftime overtime under the fluctuating workweek, if and only if certain factors are met. PlastiPak can only apply the fluctuating workweek here and comply with the FLSA legally, to the extent it can establish that Hernandez's hours fluctuated from week to week, that Hernandez receives a fixed amount of straight time pay that did not vary depending on the number or type of hours that he worked during each workweek, excluding the overtime premiums, that the amount that he received compensated him in excess of minimum wage, and that PlastiPak and Hernandez share a clear mutual understanding that PlastiPak will pay the fixed amount for straight time pay, irregardless of the number and type of hours worked. As relevant here, the fluctuating workweek requires a fixed weekly wage, as counsel for appellant acknowledged, and that the fixed weekly wage must be divided by all hours worked. Here, both of these critical elements are lacking. Moreover, PlastiPak may not rely on the fluctuating workweek, where here his base salary was not intended to cover all hours of work, but was only intended to cover the first 40 hours of work each week, and where PlastiPak paid Hernandez only straight time, or the same rate for both his non-overtime hours and his overtime hours worked. Notwithstanding, PlastiPak's conclusory assertions that the law, from the DOL, has been mistaken, its briefs are devoid of any authority supporting the notion that the pay policy issue complies with the FLSA. Instead, an avalanche of authority from courts and the Department of Labor has been actually— —Counsel, are you saying there's no authority from the Department of Labor ever on whether some sort of pay differential, whether a shift premium or some sort of bonus or commission or defeats completely the fluctuating workweek? Is that your contention? —I think the law as it applied at the time that the district court ruled in this case, that's accurate. There was never a court or the Department of Labor that said that you could just add that a fixed minimum wage—to answer Judge Bransford's question, that a minimum fixed wage was the same as a fixed amount for a straight-time pay. —What about Interpretive Bulletin 4, which is the very thing that Meisel purported to adopt, or at least use as an understanding of what this all means? —I don't think that that bulletin explicitly said that you could add additional pay. —So I'm looking at the Interpretive Bulletin right now, and this is at Interpretive Bulletin, and it's numbered, so this is number 7 on the bulletin, and it says, the regular hourly rate of pay is arrived at in various cases as follows, and then it gives as an example, example number 4, the weekly wage, and then in parentheses it says, including production bonuses, if any, end parentheses, averaged over the total hours worked each workweek where there is no regular number of hours. In other words, exactly the situation we have here. That seems to contemplate exactly a production bonus, right? —I think the wording could certainly be read in the way that you're saying. I think for, at least since early 19— —I just read it to you. How else can it be read? —Well, I don't know that it explicitly blesses that, but that is certainly the example that they give. They don't actually— —Of how to calculate exactly this sort of scenario, which is someone's paid a weekly wage, and that weekly wage includes a bonus, and then it's averaged over the total hours each workweek, so divided by the total hours worked, and there's no regular number of hours. In other words, the hours fluctuate per week. Isn't that exactly what the Supreme Court was referring to in Misel? —No, that is not what the Supreme Court was referring to in Misel. In Misel, the court was only looking at a pay or compensation that solely dealt with a salary. There was no production bonus or any bonus of that, of any type. And the other thing is— —Counsel, what about the 1999 wage and hour letter that was asked by a federal employee or some sort of federal lawyer about what to do where the employer paid a fixed salary but had accrued leave and had some bonus time that were to pay out? Didn't DOL specifically give them authority to use the fluctuating workweek, even though they were paid some additional compensation on top? —Yes, and the distinguishing characteristic in both of the cases, meaning Administrative Letter 4 and the DOL letter, is that those, in both scenarios, neither of the bonuses were tied to hours worked or type of hours worked in the workweek at issue. —The bonus is okay. I just want to be clear. So it's okay to pay as long as additional money, as long as that additional money is not tied to the type of hour worked? Is that the rule? Where is that in— —Yes. —Where is that in 114? —Where is that— —Regulation. —It's in the applicable regulation in A. It's also in the preamble to the 2011— —As I understand, your position in the District Court position is it is either a fixed salary—you've got to pay this and nothing else—and if you get paid something else, then it defeats the fixed salary. How does that position square with what you just said here, number one, and this authority from the Department of Labor? —I think it squares with the—we have additional compensation that's tied to the hours worked, and we also have other factors here. We're not just relying on the addition of the pay. As you know, the court here may affirm the District Court's decision on any grounds supported by the record. Here, there's multiple grounds. In addition to this issue, and it's undisputed that Mr. Hernandez received money that was tied to both the type and the number of hours he worked each week. His pay was not— —I want to continue on the definition of fluctuating work week and this fixed salary concept, and your proposition that there's no authority. Let's talk about Lawley from the First Circuit, which is the circuit that decided O'Brien, that your colleague discussed earlier. In Lawley, the court there said that a predetermined commission on top of the fixed salary did not defeat the fluctuating work week, right? —Yes, it did. —Right, so that's additional compensation on top of the fluctuating work week, on top of the fixed salary that did not defeat and still was used to calculate the fluctuating work week, right? —I think that Lawley is distinguishable in that regard. Lawley both discussed the situation here where additional compensation was tied specifically to hours worked and said that that is not compliant with the fluctuating work week or the FLSA. —How is that— —But if you get a bonus, if you get a bonus that's not tied to the time that you've worked, and in that case, there's a commission, another—an alternative methodology permitting half-time is when someone's paid in part by commission. So from—and here, there's no dispute. Mr. Hansen was never paid any form of compensation. —But if fixed salary, but counsel, a fixed salary in Regulation 114 is specific to one flat salary with nothing else in addition, if that's the proposition that we have to accept, then how does anything that is paid on top of that allow—or how is allowing anything on top of that, how would that not defeat the fluctuating work week, and how is that different than what was paid here? —I believe, as I said before, that the—Your Honor, the preamble to the 2011 Regulation 778.114, which was the applicable regulation at the time of this case, distinguishes between the two. If compensation, which is, to use your terms, paid on top of the base salary, and it's based on anything other than hours actually worked, I mean, it's not tethered to hours worked, that appears to be—and the courts have said they've distinguished that situation, which seems to be blessed by certainly some courts, versus the situation we have here, where the additional compensation is explicitly tied to both the type and number of hours worked. Here, it's all compounded by the fact that Plastipac did not divide by all hours worked when they did their calculation. Both the acknowledgment form that they had everyone sign, and week after week after week, they divided by 40 hours. So that's another substantial departure from the fluctuating work week. This court has said explicitly that you have to divide by all hours worked. —Counsel, didn't that result in your client being paid more money? —Not more money than he would have been had the default methodology of just time and a half been used. —But if we did a regular fluctuating work week—in other words, if we determined that fluctuating work week applies, and the employer used a denominator of 40 rather than the hours actually worked, doesn't that result in more money to your client? —It would, but, Your Honor, I would submit to the court, I think that's circular reasoning. You can't use the fluctuating work week because they only divide by 40 hours, and the end result is that you're paying—and they paid Mr. Hernandez straight time. He received the identical rate for his hours up to 40 as he did beyond 40, and now, retroactively, they're saying, yeah, but had we complied with a methodology that we did not comply with, we could have paid him less under the law than we did. So he's actually received a windfall here. We paid him more than we had to, but they were never entitled to—the presumption, I think, of the question, which is, in my opinion, erroneous, Your Honor, is that they were never entitled to use the fluctuating work week in the first instance. It's true that paying straight time, if they divided by all hours worked rather than 40 hours, and then instead of paying half-time, the number that was derived by that calculation, they paid straight time, and they didn't add in the time-based bonuses, additional pay for working certain shifts, then his pay would have been only half-time. It would have been less, potentially, than what he received, but they didn't do any of those things. They did not comply with any of the prerequisites, really, other than ensuring that he got paid more than minimum wage. They didn't comply significantly with any of the prerequisites, all of which have to be complied with in order to be able to use the fluctuating work week in the first instance. So to say, I think it's a false choice to say, well, and that's—the Ninth Circuit addressed this almost identically in the Parks case, and they say you can't look at— you're comparing apples to oranges. You can't say, yeah, but had they complied with the fluctuating work week, they only would have paid him half-time. Here, they didn't, but they paid him something more than half-time, so didn't he actually get more than he would have under the law? That's, to me, a false choice. I don't think that that's really what the law—that's not what the law requires. Certainly, if they had complied with the fluctuating work week, they could have paid this half-time, but only if they complied with the fluctuating work week. You can't just pay half-time, in other words, and then say, look, we paid straight time. We only had to pay half-time because there's a way we could pay half-time. We didn't qualify for that, but had we qualified, we could have paid him even less than we did. You sort of have—they sort of had to make their choice, and they did here, and they tried to cover their tracks. They paid him straight time, or it's the same—the identical amount. It's undisputed. They paid him the identical amount for his overtime hours as they did for his non-overtime hours, hours one through 40, each week, and he got paid overtime. Under every iteration, since it's been included, I think since 1961, of the regulation, 778.114c explicitly bans that. You can't do that, and they couldn't do that here. So to try and rationalize it retroactively and say, yeah, I just—one of the things that's been troubling me about this case, and I think this—actually, this argument has been very helpful in elucidating this, and I want to get your response to this, is the difference that some courts have drawn, that you've drawn, between a commission-based bonus versus an hourly-based bonus, right? So one bonus is based on you having a successful week or selling something or producing more, and another kind of bonus would be based on the hour's worth. Is the difference the economic realities of those two sort of functions, that those are two sort of in economic reality, as Mr. Cummings had talked about earlier, those two kinds of bonuses are just a different kind of bonus. The economic realities of those bonuses are different. Do you get my point? Not exactly, Your Honor, but I'll attempt to answer it. I don't think that they're two versions of the same thing, I guess, to answer your question. I think the inherent— Well, I think that's the point. Those are— The problem with the fluctuating work—I'm sorry, I didn't mean to go forward. The problem with the fluctuating work week, and MISL initially sought to resolve, is what do you do when someone works a non-fixed number of hours, but the amount of pay that they receive is the same every week, and that pay is intended to cover all of the hours that they work? And where you have a production-based bonus, that doesn't impact that analysis. A production-based bonus doesn't speak at all to this idea, and it's one of the seminal ideas of a fluctuating work week, is that the pay is supposed to cover all hours worked. And when you have a production-based bonus or commission based on production, it doesn't affect that analysis. What does affect the analysis is when you're separately paying for certain hours an additional amount because those hours have been worked or because you're working a different type of hour, then the pay can't possibly be said to be covering all hours of work, because you're paying separately for hours of work, and here, not only are they doing that, they're actually, by using a 40-hour divisor, what they're saying, and since the 30s, the Supreme Court has said, we don't look at what the parties say they're going to do, we look at what the parties actually did, and here it's undisputed that what they did was they divided both the holiday pay, the shift differential pay, and the base pay each week, not by all hours worked, but by 40, and everything, and that evidence is that, again, obviously, it's inherently incompatible with the fluctuating work week. It couldn't possibly be that it only covered 40 hours, but in actuality, covered all hours worked, and I think this court has, in the Wellington case, or I'm sorry, the Wethington case, the fluctuating work week only applies when the regular rate is determined by dividing the actual hours worked in a week by the rate per week. That's indisputably, that's not what happened here. No matter how, it is true that he worked more hours than 40 sometimes, but no matter how many hours he worked, whether it was 32, or 35, or 40, or 45, they divided by 40 every single week. That's not a fluctuating work week. That's a 40-hour work week. Counselor, your time has expired. Thank you. If you could wind up. Okay, I think this is a good place to stop. I was just going to say that the fact that they divided by 40 demonstrates the exact opposite of the intent to pay, and that the pay would cover all hours worked, and rather, it only covered 40 hours. That's why he's, moreover, the pay did not cover any overtime hours. It only covered the first 40 hours, so until he got paid his straight-time pay, he had received no overtime pay. Thank you. Mr. McCombs? We'll start with the last point. As a practical matter, cracking overtime, dividing by 40, it's the same number every week. You don't have to go and do a bunch. It's a complicated community. Worked 55 and a half hours this week, so there's a simplicity, and I think it's undisputed that Section 207 of the FLSA sets a floor on overtime. No court has ever said you can't pay them more, so yes, he's entitled to this one thing. It's half-time. It's half of his regular rate. The fact that they pay him a lot more doesn't negate anything. 207 is a floor, and the fluctuating work rule is not at issue in this case. No court, the rule itself, if Mr. Hernandez had never received a shift premium, we would not be here. There's all that avalanche of authority he talks about, all except the existence of the fluctuating work rule, and it's a basic thing. They all assume that most of them psyched to missile at some point. They fail to analyze missile, and that's their mistake, but it just is the general proposition, and so there's no difference. The only question here is whether, as is Judge Brasher, and whether an hours-based bonus. There's also no question whether you get any other kind of bonus added on top, and the case law is clear. You just put that in the mix. That goes into the denominator. You divide the whole thing by that, so there's no question there. The only question is very specific case. If you add a bonus, it's time-based, and we have to take a second here, and I hope I don't go over, going to where this error came from. He talks about an avalanche of authority. All of that authority goes back to the O'Brien case, and it goes back to the mistake O'Brien made, and every single case, if you look at it, actually truncates the language of 778114. Now, 771184 is a direct descendant of bulletin number four. Every single time it got passed, he said, well, this is just an interpreted bulletin. We are just clarifying. We are not changing, so the intent of 114 is not to change anything that wasn't in bulletin number four or in the 1942 wage order that specifically called it a minimum, so the Department of Labor, until 2011, never intended to change it, so we look at that. Give me a minute because he will receive such fixed amount as straight-time pay. This is the end of the first sentence of 114, for whatever hours, whether set or refuted. That phrase, as I'm going to receive something as straight-time pay, that does not mean the whole straight-time pay has to be fixed. It means the fixed has to go into the straight-time pay. As straight-time pay, you know, we're doing a sentence like that's an adverbial phrase, so I say I pay you a money order as payment of the debt. That doesn't mean I can't also pay you a personal check as payment of the debt. I can't also pay you cash as payment of the debt. It's just that as phrase describes the role of fixed salary. It goes in as opposed to overtime. It's not going into overtime, and everybody, you look at O'Brien, you look at Lally, you look at Descartes, you look at every single case, you look at the 2011 proposed change, which is really just an interpretation of interpretation, so it's got as less deference as possible under the administrative law. They all truncate that. They drop that as, or they put in a definite article rather than indefinite. They forget to say that that 114 is not claiming that all the straight-time pay, that sentence, English doesn't work that way. It's an as phrase. It's the role of the fixed, it's what the fixed salary does. It goes into straight-time pay as opposed to overtime pay. It doesn't require that all the straight-time pay, all the compensation must be fixed. There's no actual, English is a very structured logical language, and that it's just a misinterpretation. Can I ask you one quick question? You had talked earlier about economic realities, and my question was, is distinguishing between commission-based bonuses, so bonuses based not on time, and these kind of shift premium bonuses that are based on time, is that distinction, does that distinction make sense as a matter of economic reality? Are those two separate kind of economic agreements between people? No, because the economic reality that matters, what economic, if you, and for MISL, and for the establishment, is the fixed salary itself. Whatever you add on top of the fixed salary, could be time-based or not time-based, does not change the economic reality. There's a slight but trivial and meaningless difference in the economic reality of the bonus, but it's trivial because it doesn't change the existence of the underlying, actually fixed, fixed in practice, fixed in understanding, fixed in economic reality. That doesn't change. So, and the only reason we make a distinction, that distinction only comes from a misinterpretation of 114. You look, go back and look at Descartes, look back at O'Brien, look at Lawley, look at all the district court cases that all cite back to O'Brien eventually. None of them don't eventually go back to O'Brien. So, this avalanche is really an avalanche caused by the stone of O'Brien, and it made a mistake, made two mistakes, failed to go see whether this, one last thing, you destroy shift premiums with this, right? Because a shift premium of $30 gets translated to paying triple overtime. And that could be like five, four, five, $600, $30 shift premium turns into a math. That means, essentially, that means salaried employees can't get shift premiums. I really can't. The pressure is, Mr. Cummings answered your question. He has. Yes. Okay, I'm done. Thank you. Thank you for coming. Okay. I'm done. I'm going to say that you were, the point that you're destroying, no shift premium, no salaried employee can get a shift premium under this very artificial rule. All right. Thank you, Mr. Cummings. We appreciate the presentation. And that brings us to the next case. Thank you very much, your honors. Thank you. Thank you for your time. I appreciate you coming. Thank you.